The next case on the call this morning is Agenda Number 11, Case Number 107-139, Mark O. Stern v. Wheaton-Warrenville Community Unit School District 200. One moment, counsel. We'll let everybody get seated. You may proceed, sir. Thank you. May it please the court, counsel, justices, my name is John Relias and I represent Wheaton-Warrenville Community Unit School District Number 200. This case involves the per se exemption under the Freedom of Information Act for a personnel file. Mr. Stern, under FOIA, requested the employment contract of the superintendent of the school district. Pursuant to Section 7-1b-2, the school district refused and rejected that request because under Lieber v. Board of Trustees, there is a per se exemption for the specific items listed under 7-1b of the FOIA Act, and that includes a personnel file. The school district was successful at the trial court. The second district, Illinois Appellate Court, reversed, holding that a review of the contract must occur to determine if there was or would be an unwarranted invasion of privacy of Dr. Catalani. However, that is not the per se exemption and is not the basis for which the school district refused to disclose the contract. Under 7-1b of FOIA and Lieber and most cases following Lieber, there are two types of exemptions. One is a general exemption, if indeed any requested document is an invasion of privacy, in which case not only the school district but a reviewing court may do an in-camera inspection and under a balancing act approach determine whether or not that document or the release of that document would invade the employee's privacy. Didn't Catalani testify that he made the contract available as a personal decision? Yes, he did. Does that make this question a legal one, whether his action binds the district, if it's not a factual determination? I also believe that that is correct, Your Honor, and I do not believe that whatever Dr. Catalani did in his own right is a waiver because the Freedom of Information Act and the disclosure requirement falls on the district, not an individual. And under numerous cases, at least federal cases, determining the powers and duties of school districts, the only body that can bind a school district is its Board of Education, not its superintendent and not any other employee. So what Dr. Catalani did individually is different and does not bind the school district in this request. Because the school district decides to take a document and put it in one file marked personal, does that really make it personal and confidential? Not in the broadest sense as you stated it, but the Copley Appellate Court, I believe, dealt with that and gave the framework for which the per se analysis should be followed. And that is, no, you can't say, I am going to pile every document into someone's personnel file and therefore it's per se exempt. What the court must do in a review is to determine if the requested document is the type of document that would normally be put into a personnel file. Can you give me an example of what kind of personal information would be found in a contract of employment with the superintendent? Your Honor, I'm not going to answer that question directly immediately to say that under the per se approach, the General Assembly and the legislature has determined that if a document is properly in a personnel file, that's the end of the inquiry and it is presumed to be an invasion of privacy. That's one of the questions that's raised, is it properly in the personnel file? Yes, and that is completely different from saying you make an analysis of the document itself to determine if there is anything in there that is an invasion of someone's privacy. If that is the standard, then there is no per se exemption for any document in a personnel file and you read right out of the statute that exemption because then you are doing the balancing test and the general exemption under 7.1 and not the per se exemption. And Liebert specifically says that once you make a determination that the type of document is properly labeled or placed in the exempted category, that's the end of the inquiry and you go no further. Now, you rely on Copley as the basis of why this is properly a part of the personnel file, is that correct? Yes. Isn't that language dictum? I mean, that wasn't an issue in Copley. Wasn't only the performance evaluations and disciplinary records were an issue, I thought, in that case. That's correct, Your Honor, but I do believe that for anyone to argue that an employee's contract is not part of his You cannot have an evaluation, as you had in the Copley case, unless you have a contract upon which that evaluation is based. It sets up those standards. So the basis, the first document other than an application in anyone's personnel file is a contract, if indeed there is a written contract. Counsel? Yes. Let's use language that you've already used in this argument, and that goes to reading something out of the statute. Now, 3A of the FOIA mandates disclosure of all public records, right? Yes. And then if you go to 2C8, I believe, it defines, 7 and 8, define what public records are, and it includes contract, right? Yes. So now you are asking us to say that if the contract is in the personnel file, it is per se exempt. Wouldn't that be reading 2C7 or 2C7 and 8 out of the statute? Well, Your Honor, you have to disclose public records. Public records are contracts. Now you're saying there's a per se exemption if that contract is in the personnel file. How is that not reading 2C8 out of the statute? It's my position that because of LIBOR and the per se exemption language, that it takes precedence over the other parts of the statute. And, indeed, if it does... Well, let me go back to more of your argument. Okay. And that is that the heart of any personnel file is the contract. Correct. Assuming that when the statutes are written, there's that understanding that the heart of any personnel file is the contract, how can that take precedent over a statute that says you have to release public records which include contracts? Wouldn't it be presumed, wouldn't everybody know that that contract has to be in that personnel file and would be per se exempt? When would the contract under 2C8 have to be released? If it's always going to be in the personnel file, which is per se exempt. It would never be released then, Your Honor. Well, then it is written out of the statute. Yes, yes, it is. Because that, it's not only the statute, it's the LIBOR Supreme Court interpretation that states once you have a per se exemption, you make no other inquiry other than did the district or did the public body establish that the document fits into the per se exemption category, and we did that. Did the LIBOR Court specifically address reading 2C8 out of the statute? No. No, not to my knowledge. How do you want us to get to do that since it seems pretty clear from what FOIA requires? How do we do that? How do you want us to do that? What I am suggesting is that LIBOR states there is a per se exemption for the specific items listed in 7.1b, and that no further inquiry is needed, and that is a specific statute subsection interpreted by LIBOR and most other Illinois appellate courts. So what I'm saying is following LIBOR, which is a Supreme Court precedent, that that exemption takes precedent over the other parts of the statute. If we disagree with your position, we never get to the Catalani waiver issue, do we? If we agree with the appellate court here, do we ever even need to talk about Catalani and him turning over the records? Yes, following the appellate court, because the appellate court used a balancing act or a balancing method to determine whether or not, as Justice Friedman asked earlier, what part of the contract is an invasion. My only point is if we say that the contract has to be turned over under the act, it doesn't matter whether Catalani waived it or not. That's correct. Okay, that was my only point. Oh, I'm sorry, yes. That's fine. Let me talk about waiver for just a little bit. Sure. I know that you made an argument that probably applies, or you would say applies, to what I'm going to talk about, but I am concerned about the fact that this contract that was secreted in the personnel file was voluntarily shown to several newspapers by Catalani. And, indeed, it appears, and you can tell me what the record reveals, that Mr. Stern was not favored by the school district and that he was denied access to the same materials that were made available to other citizens, albeit newspapers. Other than your argument that the school district didn't make this waiver so there can't be a waiver, would you have any other further argument just in case you were unsuccessful with that argument? Well, the school district was not aware of the release by Dr. Catalani. The school district, and when I say school district, I mean the Board of Education. And Dr. Catalani put certain conditions upon the release of that agreement, and, indeed, with the Daily Herald, when he thought that the agreement that he had made with the Daily Herald might be breached by the Daily Herald, he called the newspaper to make sure that the newspaper followed what he believed was his agreement with them. So if you look at a request under FOIA, if the request is granted, the individual can do whatever he wants with that document and no conditions attached. There was one limitation, but there were several disclosures. Was that limitation contained in all of the disclosures? In one of the other disclosures, a reporter from the Tribune was allowed to see, to read the contract, but not take a copy of it. So, again, there was not compliance with FOIA. So what I am saying is that there really wasn't a waiver under FOIA because the full requirements of a FOIA request were not followed. One, Dr. Catalani, rightly or wrongly, thought he had an agreement with the Daily Herald to limit the use of that, which has nothing to do with FOIA because there is unlimited use. And, two, with the Tribune, the reporter only read the document and was not allowed to copy it, which under FOIA he had that right. So what I am saying is that these, as to the waiver argument, that there wasn't a waiver under FOIA. There may have been some other waiver, but there were strings attached, conditions attached, that do not follow FOIA. Sir, you are asking us not to look at the document itself, isn't that right, the contract? So under every FOIA request, an employment contract is presumed to be the same? Same exempt under the statute, yes. And that we have to presume that it only contains personal information, isn't that right? No. You don't even, that presumption has been made by the Act itself. I am not asking you. But what if it bears on the public duties? It doesn't matter, is what I am saying. Or if it isn't a high-ranking employee, just a normal employee, and they are public duties under other parts of the Act. This is what, if it is in a personnel file, there is a per se exemption. What you are talking about is basically arguments to change the statute, to make it a balancing test for a personnel file document. That is not what the statute says, and that is not what LIBOR. But you are saying all information in the personnel file is not available? That is correct, because it is in the personnel file, and there is a per se exemption. But again, that is what the Supreme Court says in LIBOR. Isn't that contrary to what the intent is on FOIA requests? An employer could put all kinds of things in a personnel file and hide behind that. No, because the inquiry that the court can make is, is the document requested the type of document that would normally be in a personnel file? So that is the inquiry. But again, you know, the school district should be allowed to have the protection of the exemption in FOIA. It is not, the school district did not create this exemption. The legislature did. And other than Ruppert and the instant case, every appellate court dealing with this after the Supreme Court in LIBOR has said that those specific exemptions of 7.1b are per se, and all of the inquiries, all the questions that have come up regarding balancing, whether or not you read it out of the statute, whether or not it's a public duty or not, are irrelevant. Because it is a specific exemption that I am saying trumps the other sections of the statute. But Section 7 does not use the word contract. You're assuming contract in personnel files, right? Following Copley, what I am saying is the inquiry that is made is, you look to what would normally be in a personnel file. Yes, it says personnel file. It's a more broader term. And LIBOR said that most of those per se exemptions are specifically listed. It says personnel file. And again, not to be redundant, another provision of the act specifically says the contract is a public record that has to be disclosed. Right. But under that theory, every document in a personnel file would be disclosed. And there would be no need to have the specific exemption. You can't have it, not you, the public, the statute can't have it both ways. You either have a per se exemption in which the inquiry goes to whether or not the document requested is one that would properly be in a personnel file, and the trial court determined that an employment contract is the type of document that would be in a personnel file, or you don't have any per se exemption under a personnel file at all and you use the general exemption. And what I'm saying is that would require this court to overrule LIBOR. But, counsel, doesn't a teacher's employment contract, isn't it public under the exemptions in Section 7.1Q? Yes. So employment contract for a teacher is public, but the superintendent is not. No, I'm sorry. If a teacher's contract is in a personnel file, which is where it is, that contract is also exempt under the statute. All employment contracts. So that would be directly contrary to what it says in 7.1Q, that it's public. I don't, let me get out 7.1Q because I don't. Counsel, I don't mean to, counsel. Yes. I note that your time is up. Okay. But you're going to have time to do this and time to look it up while you're, here's some more arguments here, okay? So I'm not going to deny you the right to give us this information. You'll have that chance. Thank you. Okay. May it please the court, your honors, counsel, my name is Sean Collins and I'm here to speak for Mark Stern, the plaintiff appellee. I'd like to pick up right where my opponent left off, please. There are at least five places in the law, maybe six, which deal directly with the requirement that this document, as several of your honors have referred to already, this kind of document is a paradigm document. It's quintessentially the kind of document that the people of the state have a right to see. Section two, as your honor referred to, section two, subsections seven and eight make that clear. As they define public record to include, among other things, all information in any contract, all information in any contract dealing with the receipt or expenditure of public funds, that's sub-seven. Sub-eight, the names, salaries, titles, and dates of employment of all employees and officers of public bodies. Sub-Q, which was just referred to here, is all final contracts. All final contracts shall be available for inspection and copying. Furthermore, the lead-in, the lead-in to the personnel file exemption, which I'd like to come back to more in just a minute, the lead-in to that before we even get to personnel file, there's a warning, if I may call it a warning, from the legislature. And it says that the disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. It's almost as if the legislature saw this case coming. Where that sentence fits in is right before, it's in section 7.1.B, and it precedes the very personnel file exemption that is being invoked by the district here. And I think that single sentence and the importance of that sentence is what makes the district's argument one that respectfully should be rejected on its merits. The district... But you're arguing, counsel, that it's not necessary to get to whether this is a document that is ordinarily a part of someone's personnel record. It is the nature of the document itself. I would agree with that precisely, Your Honor. It is in the personnel file. But as the record court said and the appellate court said below, and I believe they got it exactly right, that the presence of this document in a personnel file doesn't end the question. And one of the main reasons why is because of the kind of document that this is. The Lieber court was not addressing a document where Illinois law said not just the Freedom of Information Act, but the Open Meetings Act and the Illinois Constitution said this kind of document that people are supposed to have access to. That's the kind of document, respectfully, that we're talking about here. But furthermore, this sentence, this sentence says when read in conjunction, when we look at this exemption and the language of it as a whole, and we don't just focus narrowly and respectfully, I believe, improperly on the two words personnel file, and we step back and we say, how did the... what language did the legislature choose? What language did the legislature choose to limit the reach of even the personnel file exception? And in context, what that sentence I just read meant is that while information under certain circumstances found in a personnel file may be exempt because of privacy considerations, not so where the information in that personnel file, and I'm quoting now, bears on the public duties of public employees and officials. That kind of document shall not be considered an invasion of personal privacy. That's precisely the document that we're talking about here. And maybe the most succinct way that we know that we're not talking here about a document that has anything to do with Dr. Catalani's personal privacy is he's never said so. The district has never said so. The discussion here about waiver and the acts that I believe clearly constitute a waiver, also I think say something more important even than waiver, even before you get to the waiver argument, and that is what Dr. Catalani and another employee of the school district said and admitted when they turned this document over not only to two newspapers, but another employee of the district and individual school board members, as that was their admission that this document is not something that the public ought not to see. This document is not something that involves the personal privacy of Dr. Catalani. The school district's position boiled down is this. What is in the record before your honors is this. Dr. Catalani was paid while he was employed by the school district and pursuant to this contract that Mr. Stern has been trying to get, $380,000. The record before you also says that that made him the highest paid superintendent of public schools in this state. Now, it is the position of the school district, evidently, that Mark Stern and his fellow taxpayers have to pay their taxes to pay that salary, but when it comes to trying to find out what Dr. Catalani was supposed to do to earn all of that money, they don't get to know that. That is a government-kept secret, legitimately so, according to the district. Counsel, if I may. Yes. I'm seeking from you the relief that you want this court to award you. I note, if I understand it correctly, the appellate court has sent this case back to the trial court for factual findings. Yes. What is it that you would like us to do different than that or the same as that? Your honors, respectfully, I would ask that this court order that the document be turned over for two reasons. The law requires it, I think very clearly. I think the discussion that's been had already this morning demonstrates that it does violence to this important law to take a document like this, where in several places it says people like Mr. Stern are supposed to get it, put it in a personnel file and place it off limits. For that reason, it should be produced. Also, I believe, the several people to whom this document has been given also say and admit that the district admits and Dr. Catalani admits there's nothing in this contract that Mr. Stern or the public should not see. I don't believe, respectfully, while I'm grateful for the rationale of the court below, the Stern appellate court, the one area in which I would part company and ask this court to part company is there's no reason to go back and trouble a trial court with whether or not there's been a waiver here. Clearly, there has been. And respectfully, I'm sorry. Is it clear from the record that there is nothing, as you say, that there's nothing in the contract that would be considered of a personal or private nature? Well, I would say, Your Honor, yes, there is, mainly because the, for two reasons. One, the district has not said so. I've seen no argument in its papers. I heard nothing this morning to suggest that. Beyond that, I believe the conduct of Dr. Catalani himself. I mean, if anyone should have said to a newspaper, I'm not going to show you this contract because of something in its contents, it would have been Dr. Catalani. There's no evidence in the record. There's nothing beyond it that I'm aware of that says that he ever mentioned that. Hasn't the appellate court taken a safer route, though? I mean, to just affirm the appellate court, they've indicated that they presume that it is public, and just to take a look at it and see whether there's anything in there that should be redacted. Do you have a real problem with that, or you're just saying that your hope would be that this court would just say turn it over and I guess your alternative relief is just to affirm, right? It is, Judge. Let me answer your question, if I may, this way. I think the appellate court announces a very sensible general rule, that it would have general applicability to these kinds of contracts. What I'm suggesting, though, Judge, is based on these facts, all right, because what is before the court is not only the general nature of this kind of contract and the FOIA law says what it says, but also what the district and what Dr. Catalani have done in turning it over. That's why I say I think very clearly there's a waiver here and there's no reason to go back. Under the specific facts that we've talked about as waiver facts here this morning, under these specific facts I don't believe it's necessary to go back to the trial court, but I do believe that what the appellate court has announced is a very sensible across-the-board rule because obviously other contracts, not Dr. Catalani's now, but others could potentially include private sensitive information. You just said that both the district and Dr. Catalani waived this or authorized it. How did the district authorize it? How did the district waive it? Yes. Because of the people who were involved here. I mean, the argument of the district as I understand it is that only the school board can authorize disclosure of a document under FOIA. Well, that's not the way they've behaved. I don't believe that's the law of the state. I don't believe that's the law of agency here. What we have here, if we examine briefly the chronology, we see what's going on here. In April of 06, the contract was denied to Mr. Stern. The next month, Dr. Catalani furnished it, sent a copy of it to the Daily Herald. In July, Mr. Stern asked for it again in the form of an appeal. It was denied to him. Then in October, the Chicago Tribune asked for it and was allowed to examine it the same day that it made the request. Now, these people acting on behalf of the district responding to these FOIA requests use language. In one instance, in the instance where it was faxed to the Daily Herald suburban Chicago newspaper, it was faxed on school district letterhead, faxed by Dr. Catalani himself from his office. And I would suggest that's very clearly the act of the district. Furthermore, when the document was provided to the Chicago Tribune in October of 2006, it was provided pursuant to an email, excuse me, when the document was made available for inspection. That information was conveyed to the Tribune by the records manager, who is the individual to whom the FOIA request was made. And her response used the language, per your request. So we have district employees responding explicitly to FOIA requests, saying words like, per your request, using district resources. I don't see, and these are the people who customarily deal with Freedom of Information Act requests. The suggestion- Who else, Dr. Catalani, who else, what other people were actually involved? Denny Young is the name here, and she's identified in the record, Your Honor, as the records manager. And she is the individual in some of these instances, she is the individual in the record to whom these requests are made. She is identified by the district to the public as someone to whom FOIA requests should be made. So she's receiving most of these requests, and she's also responding to some of these requests. When we step back here, and we look at what's- We have a document, which I believe very clearly and without question, is something Mr. Stern and members of the public should see. The clincher, respectfully, I believe, is when we look at Section 1 of FOIA. And Section 1 has a couple of titles to it. One of them is legislative intent. And as Your Honors are familiar, and if I may, it says in part,  that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees. And it goes on to say, such access to these records, and now I'm quoting, is necessary to enable the people to fulfill their duties, their duties of discussing public issues fully and freely, making informed political judgments, and monitoring government to ensure that it is being conducted in the public business. I would respectfully suggest to Your Honors that there is no way that we can square with the language that I just read, the notion that the Freedom of Information Act may be invoked to keep from Mr. Stern and his fellow citizens a document that describes the duties of the senior executive officer of the district to which they send their children every day. If indeed, as this act says, they have the duties of discussing public issues, making informed political judgments, and monitoring government, they should have at least the right to see those 30 pieces of paper. Finally, I would say that Your Honors certainly don't need a lawyer like me to tell you about the political environment in which this case presents itself. I think what we have here is a citizen of Illinois who takes the obligations of citizenship seriously. He wants to know what's going on. He thought there was a law here that would help him. What we have here is a contract that was furnished to the Chicago Tribune the same day that they asked. Mr. Stern asked for this document to exercise his duties of citizenship more than three years ago. He's hoping you'll help him. I appreciate your time this morning. Let me respond to several of these arguments. First, Mr. Stern did not appeal from the appellate court decision. So the relief that he may request here I think is only affirming that decision. He can't ask for a change in it, which he initially started to do. So if there isn't a decision by this court, it's to affirm the appellate court decision to still allow for the in-camera inspection of the contract to determine if there is any personal items that should not be given out. And when asked and when stated, well, the district hasn't pointed out what parts of Dr. Catalani's contract are personal, and I declined to do so. It's very simple why. The contract is not part of the record. It has never been examined by the trial court or the appellate court. And it's the school district's reliance on a per se exemption, which means that at least under our interpretation and the way that we interpret LIBOR, that there is no requirement to do so. And I would like to read from LIBOR because when we talk about the political climate here, we have a statute, a statute that provides rights not at common law. So you have to read the statute, and it's clear and unambiguous language. And what we have here is an attempt, an argument, to completely knock out a specific exemption. And the LIBOR court, in viewing what the appellate court did in that case, I think is squarely on fours with what is occurring here. And this is at 408 and 409 of LIBOR. The appellate court here took a different view, holding that even if information falls within a specific exemption, the court still make an independent determination as to whether disclosure would amount to a clearly unwarranted invasion of privacy. We agree with the court in Healy, the appellate court, that it, meaning this approach, cannot be squared with the clear and unambiguous language of the statute. That's what the school board is requesting here, that under 7.1b.2, the clear and unambiguous language of this statute be followed. And one last comment. I did find Section Q, and that relates to documents or materials relating to collective negotiating matters between public bodies and their employees or representatives, and then says that the final collective bargaining agreement may be released. And I was talking about an individual teacher's contract that is signed that would be in a personnel file. And if it's in a personnel file under the law as exists under LIBOR, it's our position that that is exempt. Thank you. Counsel, I'm sorry, I do have a question. Yes. Would you want us to reverse the appellate court? Yes, and hold that there's a per se exemption. Well, actually, that it is a per se exemption, isn't it? That a per se exemption exists in this case. Yes. That then would leave, though, the waiver issue. And it's our position that there is no waiver legally or that the inquiry then would be made by the trial court. Thank you. Case number 107139 will be taken under advisory.